UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUITA MARIE QUESADA,<br><br>                Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>                Defendant. | Case No.: 16cv2716-CAB-KSC<br><br>**AMENDED ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT [Doc. Nos. 12, 13]** |

Pending before the Court are cross motions for summary judgment. [Doc. Nos. 12 and 13.] For the reasons set forth below, Plaintiff's motion for summary judgment [Doc. No. 12] is **GRANTED**, Defendant's motion for summary judgment is **DENIED** and the matter is **REMANDED** for further proceedings.

PROCEDURAL BACKGROUND

This case arises under the Social Security Act, Title XVI. Plaintiff Marquita Marie Quesada filed an application for supplemental security income on May 16, 2013, alleging disability commencing April 2, 2012. AR 177-82. The Commissioner denied the claims by initial determination on September 25, 2013. AR 114-19. Plaintiff requested reconsideration of the initial determination on November 4, 2013. AR 120-22. The Commissioner denied reconsideration on December 19, 2013. AR 123-28. Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ") on February 2,

2014. AR 129-31. The Commissioner appointed ALJ Robin L. Henrie to preside over the matter. AR 141-60. ALJ Henrie conducted the oral hearing on January 16, 2015. AR 45-76. On March 21, 2015, ALJ Henrie issued a decision finding Plaintiff not disabled under the Social Security Act. AR 25-44. Plaintiff requested that the Appeals Council review the decision by ALJ Henrie on April 23, 2015. AR 21-23. The Appeals Council denied the request for review on September 1, 2016. AR 1-6. On that date, the ALJ decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). This civil action followed.

## ALJ DECISION

The ALJ used the five-step sequential evaluation process to guide the decision. 20 C.F.R. § 416.920. The ALJ agreed that Plaintiff did not engage in substantial gainful activity since April 2, 2012. AR 30, ¶ 1. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of mood disorder with psychotic features; degenerative disc disease of the lumbar spine; and schizophrenia with paranoia. AR 30, ¶ 2. The ALJ decided that the impairment did not meet or equal any "listed" impairment. AR 31, ¶ 3 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). The ALJ assessed Plaintiff as retaining the residual functional capacity to perform the demands of

> lifting more than 10 pounds at a time, on more than an occasional basis;
>
> lifting and carrying articles weighing more than 5 pounds, on more than an occasional basis;
>
> standing or walking more than 10-15 minutes at one time, and no more than 2 total hours in an 8-hour workday, with an option to use a cane for walking or standing as needed;
>
> sitting more than 30 minutes at one time, and no more than 6 total hours in an 8-hour work day;
>
> note: regarding standing/walking and sitting, to be as comfortable as possible, claimant required the option to make the postural changes noted above, thus there must have been an option to perform work duties while standing/walking or sitting, due to the need for these postural changes;

> more than occasional stooping, bending, twisting or squatting;
>
> working on the floor (e.g. no kneeling, crawling or crouching);
>
> ascending or descending full flights of stairs (but a few steps up or down not precluded);
>
> overhead lifting or overhead reaching;
>
> any foot control work duties;
>
> working in other than a clean, climate controlled environment, with only minimal noise;
>
> working in other than a low stress environment, which means:
>
> • a low production level (where VE classified all SGA jobs as low, average or high production),
> • no working with the general public and no working with crowds of co-workers,
> • only "rare" contact with supervisors and co-workers, but still having the ability to respond appropriately to supervision, co-workers and usual, routine work situations,
> • the ability to deal with only "occasional" changes in a routine work setting;
>
> work at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks;
>
> work at more than a low memory level, which means:
> • the ability to understand, remember and carry out only "simple" work instructions,
> • the ability to remember and deal with only "rare" changes in the work instructions from week to week,
> • the ability to remember and use good judgment in making only "simple" work related decisions;

AR 33-34, ¶4 (citing 20 C.F.R. §416.967(a)).

The ALJ agreed that Plaintiff lacked past relevant work. AR 39, ¶ 5. The ALJ classified Plaintiff as a younger individual on the alleged onset date. AR 39, ¶

3

6. The ALJ categorized Plaintiff as possessing a limited education and the ability to communicate in English. AR 39, ¶ 7. The ALJ treated the question of transferability of skills as immaterial. AR 39, ¶ 8. The ALJ adduced and accepted testimony of a vocational expert that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the work of final assembler (DOT[1] 713.687-018); lens inserter (DOT 713.687-026); and table worker (DOT 739.687-182). AR 39, ¶ 9. The ALJ concluded that Plaintiff did not suffer from a disability between April 2, 2012, and the date of the decision. AR 40, ¶ 10.

## TESTIMONY OF THE VOCATIONAL EXPERT

The ALJ propounded a hypothetical question to the vocational expert ("VE") in written form. AR 272. The VE identified work as a lens inserter (representing 30,000 jobs in the national economy), final assembler (representing 23,000 jobs in the national economy), and table worker (representing 14,000 jobs in the national economy). AR 73. The VE stated that all jobs represented full-time work and that none of the work required reduction for any aspect of the limitations imposed. *Id*.

If permitted only rare contact with supervisors, the VE would reduce the number of jobs by 15%. AR 73-74. Use of a cane would not impact the ability to perform the work identified. AR 74. The Plaintiff's representative at the hearing had no questions. AR 75.

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), courts review the ALJ's decision to determine whether substantial evidence supports the ALJ's findings and if they are free of legal

---

[1] *Dictionary of Occupational Titles*, published by the United States Department of Labor. The Social Security Administration has taken administrative notice of the DOT, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. *See* 20 C.F.R. §416.966(d)(1), *Massachi v. Astrue*, 486 F.3d 1149, 1152, n. 8 (9th Cir. 2007).

error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir.1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means " 'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir.1996) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks and citation omitted).

When looking for substantial evidence, courts must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Robbins*, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989)); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007).

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B) (West 2004); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir.2012).

To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. sections 404.1520(a)(4)(i)-(v). Specifically under step five, which is at issue here, a claimant is disabled unless the

Commissioner meets her burden and shows that there exist a significant number of jobs in the national economy that claimant can do. 20 C.F.R. §§ 416.920(a)(4)(v),(g); 416.960(c); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999) (the Commissioner bears the burden of showing the existence of significant jobs). Significant jobs in the "national economy" must exist either "in the region where such individual lives or in several regions in the country." 42 U.S.C. § 423(d)(2)(A). There is no bright-line rule for determining how many jobs are "significant" under step five in the Ninth Circuit, although "a comparison to other cases is instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir.2012). Moreover, there must be more than a few "scattered", "isolated" or "very rare" jobs available. *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir.1976); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir.2014). Finally, even if there are not sufficient jobs in the regional economy, courts must still look to the availability of those jobs across several regions in the national economy. *Gutierrez*, 740 F.3d at 528.

## DISCUSSION

The sole issue in this case is whether the ALJ committed legal error at step five of the sequential evaluation process. The parties do not dispute the ALJ's findings at steps one through four, and therefore, the Court does not address them.

At step five of the sequential evaluation process, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (*quoting Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)); see also 20 C.F.R. § 416.920(g). In making a disability determination after this step, the ALJ relies primarily on the DOT for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The DOT describes the requirements for each listed occupation, including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal

and informal) ... required of the worker for satisfactory job performance.' " *Zavalin*, 778 F.3d at 846 (*quoting* DOT, App. C, 1991 WL 688702 (4th ed. 1991)).

In addition to the DOT, the ALJ "also uses testimony from vocational experts to obtain occupational evidence." *Massachi,* 486 F.3d at 1153; *see also Zavalin*, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. SSR 00-4P at *2 (S.S.A. Dec. 4, 2000), available at 2000 WL 1898704; *Massachi,* 486 F.3d at 1153. However, when conflicts occur, neither the DOT, nor the VE's evidence automatically trumps. *Massachi*, 486 F.3d at 1153-54 (*citing* SSR 00-4P at *2). "Thus, the ALJ must first determine whether a conflict exists." *Id*.

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54; SSR 00-4P at *4. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id*. at 1153. A failure to ask the VE whether his or her testimony conflicts with the DOT may be harmless error if there is no conflict, or if the VE provides "sufficient support for [his or] her conclusion so as to justify any potential conflicts." *Id*. at 1154, n. 19; *see also Barbee v.* Berryhill, No. 16cv1779, 2017 WL 3034531, at *13 (S.D. July 18, 2017), *Hann v. Colvin*, No. 12-CV-06234, 2014 WL 1382063, at *14 (N.D. Cal. Mar. 28, 2014).

This approach was affirmed by the Ninth Circuit in *Lamear v. Berryhill*, --- F.3d --- (2017), 2017 WL 3254930, at *2-3 (9th Cir. August 1, 2017). In *Lamear*, the Ninth Circuit remanded a case for further proceeding where the ALJ had not reconciled an apparent conflict between the vocational expert's testimony and the DOT. *Id*. at *4. In doing so, the Ninth Circuit held as follows:

In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE and the DOT. Presumably, the opinion of the VE would comport with the DOT's guidance. But "[i]f the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the Dictionary, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). [footnote omitted.]

We have explained that the conflict must be "obvious or apparent" to trigger the ALJ's obligation to inquire further. *Id*. at 808. For example, in *Gutierrez*, the applicant could not reach above shoulder level with her right arm. *Id*. at 807. The VE opined that she could work as a cashier, and the ALJ did not specifically question the VE about how the applicant could do this in light of her inability to reach overhead with her right arm. *Id*. The applicant in *Gutierrez*, like Lamear, argued that the ALJ should have recognized a conflict between the DOT and the VE's testimony, and questioned the VE more closely. *Id*. We held there was no error because, based on common experience, it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for one to need to reach overhead with both arms. *Id*. at 808–09 & 809 n.2.

Of course, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," *id*. at 808, and the more obscure the job, the less likely common experience will dictate the result. To avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC. [footnote omitted.] Doing so here likely would have eliminated the need for this appeal.

*Lamear*, 2017 WL 3254930 at *2-3.

1. Conflict between DOT and RFC.

Plaintiff argues that ALJ Henrie committed error because he did not ask if any aspects of the VE testimony (other than the sit/stand option) were consistent with the DOT or the SCO[2]. [Doc. No. 12-1 at 6-7.] In particular, Plaintiff argues that the DOT describes the noise level for the three identified jobs (lens inserter,

---

[2] *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, a companion publication to the DOT, also published by the United States Department of Labor. *See* Social Security Ruling 00-4p.

8

final assembler and table worker) as requiring exposure to noise level 3. The SCO defines noise level 3 as moderate. SCO App. D, ¶5. However, the ALJ found an RFC for exposure to minimal noise [AR 33, ¶4] and asked the VE to assume exposure to minimal noise [AR 272]. Yet the ALJ did not ask the VE to explain the inconsistency between the DOT/SCO and the RFC.

Defendant argues that the VE was questioned about the other details in the hypothetical and that he responded that the DOT did not provide any specificity as to those details. Thus, the VE's conclusion, which was based on his 40 years of experience, was not in conflict with the DOT. [Doc. No. 13-1 at 5.] However, the DOT does provide specificity for the noise level of the jobs and defines it as moderate. This appears to conflict with Plaintiff's RFC, which says that she can only be exposed to minimal noise. Moreover, the jobs at issue are sufficiently obscure that it cannot be decided on "common knowledge" as to whether Plaintiff can tolerate a moderate exposure to noise. *Lamear*, 2017 WL 3254930, at *2-3. Thus, there does appear to be a conflict which the ALJ was obligated to clarify.

Finally, Defendant argues that Plaintiff should not be allowed to raise any of these arguments because Plaintiff's counsel did not raise them at the administrative hearing. [Doc. No. 31-1 at 3-4.] According to recent Ninth Circuit authority, "an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency." *Shaibi v. Berryhill*, 870 F.3d 874, 2017 WL 3598085 at *6 (9th Cir. Aug. 22, 2017), *citing Lamear v. Berryhill*, 865 F.3d 1201, 1206-07 (9th Cir. Aug. 1, 2017). Therefore, failure by the ALJ to resolve the apparent conflict between the VE testimony and the DOT is reversible error.

2. Conflict between CBP and VE testimony.

Plaintiff argues that the VE testimony is also in conflict with the CBP[3]. [Doc. No. 12-1 at 7-9.] The VE testified that Plaintiff could work as a lens inserter (representing 30,000 jobs in the national economy), final assembler (representing 23,000 jobs in the national economy), and table worker (representing 14,000 jobs in the national economy). AR 73. Lens inserter and final assembler are both considered to be jobs within the optical goods industry. See DICOT 713.687-026 and 713.687-018 ("Industry Designation: Optical Goods Industry"). However, according to the CBP printout provided by Plaintiff, the entire ophthalmic goods manufacturing industry had a total of 24,910 jobs in the country. [Doc. No. 12-2.] Thus, argues Plaintiff, this conflicts with the VE testimony that there are over 30,000 jobs for a lens inserter alone, which is only one of the numerous positions within the optical goods industry.

Defendant argues that the ALJ was not obligated to take administrative notice of the CBP, and this Court should also decline to take judicial notice of the CBP. [Doc. No. 13-1 at 8.] However, the Social Security Administration has taken administrative notice of the CBP, which is published by the Bureau of the Census, and therefore it is a resource that can be used by the ALJ to make a determination as to the availability of jobs in an industry. *See* 20 C.F.R. §416.966(d)(2). Defendant also argues that there is no indication as to what information Plaintiff inputted into the website to get the results page, or whether the single page submitted by Plaintiff is complete or accurate. [Doc. No. 13-1 at 8.] While Plaintiff's search methodology is unclear, Defendant does not provide her own submission from the CBP to show whether Plaintiff's submission is accurate, and does not provide any information to rebut Plaintiff's contention that

---

[3] *County Business Patterns*, published by the Bureau of the Census. The Social Security Administration has also taken administrative notice of the CBP. See 20 C.F.R. §416.966(d)(2).

the VE's estimates of jobs available for lens inserter and final assembler conflict with the CBP.

The Court notes that the CBP is a resource which the Social Security Administration finds to be reliable and useful. It is, however, unclear as to how the information provided by Plaintiff was generated from the CBP.[4] This Court makes no ruling as to whether there is an actual conflict between the CBP and the VE testimony.

Finally, unlike an apparent conflict with the DOT, an ALJ is not required to *sua sponte* take administrative notice of economic data in the CBP. *Shaibi*, 2017 WL 3598085 at *6. Therefore, by failing to raise it at the administrative level, Plaintiff has waived this argument. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999).

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion for summary judgment is **DENIED**, and the matter is **REMANDED** to the Social Security Administration for further proceedings consistent with this order. The Clerk of the Court shall **CLOSE** this case.

**IT IS SO ORDERED**.

Dated: October 10, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] Given the lack of clarity as to how Plaintiff obtained the information from the CBP, the request for judicial notice [Doc. No. 12-2] is denied.